# Crowder *v.* Fletcher & Co.

*Certiorari to Justice of the Peace in Salvage Proceedings.*

1.  *Statutory proceedings and remedies.*—Statutory provisions which take away, change or diminish the fundamental rights of life, liberty or property, are to be strictly construed ; and statutory remedies, for the enforcement of rights unknown to the common law, " are to be followed with strictness, both as to the methods to be pursued, and the cases to which they are applied."

2.  *Salvage proceedings in matter of property adrift.*—The statutory proceedings authorizing property adrift to be taken up and secured, and giving a right of salvage to the person who performs such services

[Crowder v. Fletcher & Co.]

(Code, §§ 2863–76), create a right, and provide a summary remedy for its enforcement; and being in derogation of the common law, everything necessary to confer jurisdiction must affirmatively appear, and nothing will be intended to have been done which is not affirmatively shown to have been done.

3. *Same; appointment of appraisers.*—The property must be first exhibited to the justice, and he must determine whether, in his opinion, it is worth more than thirty dollars; and unless it affirmatively appears by a note or minute by him, which is a *quasi* record, that he determined its value to be more than thirty dollars, an order appointing appraisers is void, and their appraisement does not fasten a statutory charge on the property.

APPEAL from the Circuit Court of Jackson.

Tried before the Hon. HENRY C. SPEAKE.

In the matter of certain salvage proceedings had before L. Bowers, a justice of the peace in said county, at the instance of John M. Crowder, who claimed to have taken up the property while adrift in Paint Rock river; on the petition of John F. Fletcher & Co., claiming to be the owners of the property, for a writ of *certiorari* to remove the proceedings into the Circuit Court for revision. The property consisted of a large number of telegraph poles, and saw-logs of walnut, cedar and poplar logs, which escaped from the boom of said Fletcher & Co., during a freshet, on the 7th January, 1882, and floated down the river several miles, to the mill of said Crowder, where they were secured; and he thereupon instituted proceedings before said Bowers, as a justice of the peace, claiming salvage. The entries on the justice's docket, as certified by him to the Circuit Court, do not show at what time the proceeding was commenced; the first entry, dated January 16, 1882, being, "Order of appraisement issued January 16th, 1882; the commissioners come forward, and continued the appraisement until the 24th day of January, 1882." The appraisers appointed were J. R. Woodall, John Butler, and Thos. M. Cobb, whose report, dated February 27th, 1882, stating that they had been "duly sworn to estimate the value of the timber fairly," assessed the value of the property at $1,727.80, and the expenses of said Crowder, "as per sworn account," at $620.46. On this report the justice rendered judgment as follows: "July 28th, 1882· Judgment rendered in favor of J. M. Crowder, for sworn account, $620.46; salvage, $207.46—$827.94." Fletcher & Co. appealed from this decision, as shown by another entry, dated November 23d, 1882, "and tendered $207.40 as the full amount of the costs and compensation to said Crowder; which sum the J. P. refused, and held that Crowder was entitled to $620.48, in addition to the salvage above set out." The appeal was to two disinterested householders, with leave to them to call in an umpire; and on the subsequent trial before these

[Crowder v. Fletcher & Co.]

three persons, they awarded Crowder $650.00 " in full of all charges and demands." The petition for the *certiorari*, verified by affidavit, was filed on the 13th January, 1883. On the hearing, the court quashed the proceedings before the justice. Crowder excepted to this judgment and decision, and he here assigns the same as error.

HUMES, GORDON & SHEFFEY, for appellant.

1. This was an extraordinary remedy, not properly resorted to by appellee; he should have moved to dismiss, before the justice, and upon refusal, could have taken an *appeal.*—*Burns v. Henry*, 67 Ala. 209. An appeal or statutory *certiorari* is expressly given from any judgment rendered by a justice of the peace.—Code, § 3654. The statutes, § 2871 and § 1574, do not take away the right of appeal,—it is a vested constitutional right.—Con. Art. 2, § 26 ; *Moore v. Randolph*, 52 Ala. 531 ; *Bell v. Payne*, 2 Stew. 413. Appellee, then had a *specific legal remedy* ; therefore, this writ should not have been granted. 2 Brick. Dig. 240 § 4 ; High on Extraordinary Remedies, §§ 9, 10, 15, 16, 252, 270, 271.

2. The court erred in quashing the proceedings. Defendant can not claim that the proceedings were *coram non judice*, after acknowledging jurisdiction and making a contest.—*Byrd v. McDaniel*, 26 Ala. 585 ; *Johnson v. Bell*, 71 Ala. 258 ; 96 Pa. St. 44 ; 60 Ill. 462.

3. The proceedings were valid. The justice acted as *arbitrator*, not as a justice; the whole proceeding was an *arbitration*, and the question of jurisdiction, as to amount involved, did not arise.

R. E. BROWN, and R. C. BRICKELL, *contra*.

1. At the common law, estrays or goods adrift, not coming within the description of *wrecks*, could not be retained against the demand of the true owner until compensation was paid to the finder or taker-up.—*Nicholson v. Chapman*, 2 H. Blackstone, 254 ; *Etta v. Edwards*, 4 Watts, 63. The statute is intended to supply the deficiency of the common law, and give a lien to the finder, while, at the same time, protecting the rights of property of the owner.

2. The first duty of the taker-up is to exhibit the property to a justice of the peace within two days after taking up. The property must be *adrift*, and in a condition of peril—3 Watts, 63—whether *adrift*, and whether of more than thirty dollars in value, must be determined by the justice. The appraisers have a duty to perform distinct from that of the justice. Their appraisement fixes the amount of compensation of the taker-up, which the owner is bound to pay before he can claim the restoration of his property.

[Crowder v. Fletcher & Co.]

3. When a new jurisdiction is created by statute, and the court or tribunal exercising it, proceeds in a summary method, or in a course different from the common law, a *certiorari* is the only remedy for a review of its action, unless the statute creating it gives another remedy.—*John v. The State*, 1 Ala. 95; *Ex parte Tarlton*, 2 Ala. 35; *Intendant v. Chandler*, 6 Ala. 899; *Bryant v. Stearns*, 16 Ala. 302. The statute does not prescribe any remedy for revising the action of the justice.

4. In statutory, summary proceedings, the record kept of them must disclose every fact essential to the validity of the sentence or judgment pronounced.—2 Brick. Dig. p. 464, § 1. When a justice of the peace renders judgment in a matter of which he has not jurisdiction, such judgment may be vacated and quashed by writ of *certiorari* at common law, issuing out of the Circuit Court.—*Glaze v. Blake*, 56 Ala. 379; *Dean v. State*, 63 Ala. 153; *Camden v. Block*, 65 Ala. 236.

5. The appearance of appellants before the justice, and their consent to the proceedings, could not give jurisdiction, where it is not given by law.—*Mabry v. Dickens*, 31 Ala. 243; 2 Brick. Dig. 321, § 15; Freeman on Judg. § 120.

STONE, C. J.—In a note to Sedgwick on Statutory and Constitutional Construction, 2d Ed., commencing on page 267, we find the following language, which we consider sound and sensible: "With all the gross imperfection of the common law, it did contain certain grand principles, and these principles had been worked out into many practical rules both of primary right and of procedure, which protected personal rights—rights of property, of life, of liberty, of body and limb—against the encroachment both of government and of private individuals. This was the great glory of the common law. Any statutes which should take away, change, or diminish these rights, should be strictly construed." This rule of construction is necessary, because such statutes "oppose the overwhelming power of the government to the public power of resistance of the individual, and it is the duty of courts under such circumstances to guard the individual as far as is just and legal." In the same note it had been previously said, "statutory remedies, especially when the right to be enforced was unknown to the common law, are to be followed with strictness both as to the methods to be pursued, and the cases to which they are applied." 2 Brick. Dig. 464, §§ 1, 2. Such remedies must be sustained by the allegations and recitals of the record, and can not be aided by intendment." *Ib.*

The present controversy grew out of a claim for salvage, expenses and costs, under Chapter 3, Title 7, Part 2 of the Code of 1876, commencing with § 2863 of that Code. The claim

[Crowder v. Fletcher & Co.]

rests entirely on statutory provision; for, without it, the claimant would have no standing whatever in court. *Nicholson v. Chapman*, N. H. Blackstone 254; *Etter v. Edwards*, 4 Watts 63. The proceedings are summary, and, in their main features, *ex parte*. The statute contemplates a deliverance from peril of another's goods found adrift, and compensation, called salvage, for the labor and care bestowed, in effecting the rescue. Certain steps are required to be taken by the captor: He must, within a given time after the same is taken up, "exhibit the property to a justice." This is the first step, and one object attained by it, is the rendering more difficult a fraudulent or collusive taking up of another's property. Justices are officers of the law, are commissioned and sworn, and the presumption is, they will hold the scales of justice without prejudice or partialty. Inspecting the property, if its value does not exceed thirty dollars, the justice must himself make the appraisement and description. If, in his opinion, it is worth more than thirty dollars, he must issue an order of appraisement to three disinterested freeholders, or householders, who, after being duly sworn to estimate the value of such property fairly, must appraise and certify the same to the justice of the peace, with a description of the property. § 2864. All these steps, the statute contemplates, are *ex parte*, and take place when no one is present to represent the owner of property. And being taken, the taker up has a right to retain the property in his possession, until the owner proves his ownership to the satisfaction of the justice, and obtains from him an order to restore such property on the payment of the legal costs and charges thereon. § 2869. The rate of compensation to the captor is *per centum* on the appraised value of the property, graduated by the amount from 25 *per cent.* of the value down to 5 *per cent.* § 2870. The captor is also entitled to the justice's fees paid by him, the expenses of the advertisement, if published in a newspaper, and reasonable compensation for the keeping, if necessary to preserve the property from loss or injury, and to two dollars each to the appraisers, other than the justice. §§ 2871, 2872. The result of these proceedings, if properly conformed to, is to fasten a charge by no means light, on the owner and his property, in the determination of which he has not been heard, and generally without his knowledge.

The transcript before us contains a copy of all the proceedings, or *quasi* records, which the justice and the appraisers reduced to writing. It contains all the papers pertaining to the proceeding, except a notice served on the justice by the claimants of the timber, offering to pay a sum admitted to be due, and demanding from him that he issue an order on the taker up, to restore the property to the owner, in accord-

[Crowder v. Fletcher & Co.]

ance with the provisions of § 2869 of the Code. This notice and demand can neither validate nor invalidate the prior proceedings.

The present being a statutory and summary proceeding, in palpable derogation of the rights and remedies provided by the common law, the rule must be applied that everything necessary to confer jurisdiction must be expressed, and nothing will be intended to have been done, which is not affirmatively shown to have been done. Nor is vague and doubtful implication enough. Certainty—reasonable certainty as fact—must appear.

The first essential fact was and is that the property alleged to have been captured when adrift, was exhibited to the justice. That is—the property must be carried to the justice, or the justice must visit the property. The second essential fact is, that the justice must determine whether in his opinion the property is worth more than thirty dollars. These being indispensable precedent facts, before any authority is acquired to issue an order for appraisement, they are too vital to rest in mere memory or implication. A note or minute—a *quasi* record—should be made of them. They are the necessary conditions which justify the order to the appraisers, and the written order to the appraisers shows who are the persons selected for the service, and this, too, is part of the *quasi* record, which goes to make up and legalize this statutory, and highly summary proceeding. The present proceeding was and is wanting in each of these essentials, and it follows that no legal authority was acquired to appraise the property, or to fasten a charge upon it in favor of the captor.

The statute we have been construing makes no provision for an appeal, or for reviewing action had under its provisions. *Certiorari* is the proper remedy. 1 Brick. Dig. 332–3, §§ 1, 2, 4; *Molett v. Keenan*, 22 Ala. 484; *Benton v. Taylor*, 46 Ala. 388; *Ex Parte* Buckley, 53 Ala. 42; *Glaze v. Blake*, 56 Ala. 379; *City Council v. Belser*, 53 Ala. 379; *Ex parte* Madison Turnpike Co., 62 Ala. 93; 2 Wait Ac. & Def. 134, §§ 1, 3, 5, 8.

It is contended for appellant that after the appraisement had been made, the owners of the property came in, and appealed to an arbitration, and there litigated the questions—thus, as it is claimed, legalizing the proceedings, if otherwise irregular. We can not assent to this. The proceedings being purely statutory, and a radical departure from common law methods, no after conduct can validate the proceeding, which, as we have shown, is wanting in the first elements of regularity. Neither the justice nor the appraisers had any general jurisdiction of the subject, and we have shown above that jurisdiction was

[Hinds et al: v. Hinds, pro ami.]

never acquired under the statute. What we decide is, that under the proceedings shown in this transcript, there is no judicial determination, nor *quasi* judicial determination, nor legal ascertainment, as matter of law and fact, that Crowder, the captor, is entitled to hold the timber, until the claims asserted are paid. If he acquired any rights under the arbitration—as to which we decide nothing—they can not be maintained in this proceeding. It would seem, however, that no such acquired rights, if they exist, could operate a lien on the timber. *Nicholson v. Chapman, supra.*

As we understand the statute we are construing, the percentage allowed the captor under § 2870 of the Code, is all he can claim for rescuing the property, and placing it in a place of safety. If after this he reasonably and rightfully incurs expense in keeping and preserving the property from loss or injury, he is entitled to compensation, "to be ascertained as in case of estrays." § 2871. This has no reference, however, to labor or expense in rescuing the property from peril in the first instance. The percentage covers that, and was in no sense intended as a *sine cure* bounty to the taker up.

Affirmed.